**WHITECO PROPERTIES, INC., and White Investment Corp., Appellants (Defendants Below),**

**v.**

**Ben and Joan THIELBAR, Harold and Joy Corsette, and Marko and Lois Jakovich, Appellees (Plaintiffs Below).**

**No. 3–184A11.**

Court of Appeals of Indiana,
Third District.

Aug. 23, 1984.

Rehearing Denied Oct. 2, 1984.

Carol Ann Bowman, Merrillville, for appellants.

Gilbert F. Blackmun, Stephen A. Tyler, Friedrich, Bomberger, Tweedle & Blackmun, Highland, for appellees.

HOFFMAN, Judge.

Whiteco Properties, Inc. appeals from a judgment entered against it as developer and vendor of certain real estate located in Lake County, Indiana. Following a bench trial, appellees Ben and Joan Thielbar, Harold and Joy Corsette, and Marko and Lois

Jakovich (jointly referred to as purchasers) were each awarded $15,000 compensatory damages, and $10,000 punitive damages. Whiteco attacks these awards as excessive, contrary to law, and contrary to the evidence adduced at trial.

The evidence most favorable to the judgment of the trial court indicates that Whiteco[1] was engaged in the business of building and selling condominiums on Lake Holiday, near Crown Point, Indiana. This project, known as Lakeside Condominiums, consisted of eleven buildings, each housing eight separate units. In promoting sales, Whiteco representatives referred to their condominiums as either lakeside or roadside units.

During 1977 and early 1978, the Thielbars, Corsettes, and Jakoviches investigated the purchase of lakeside units located in Building No. 5. Whiteco representatives guaranteed the Corsettes and Jakoviches an unobstructed view of the lake, while the Thielbars were informed that although a small, low lying cabana would be built, it would not impair their view of the lake. In exchange for this unimpaired view of the lake, they agreed to pay $10,000 more than they would have spent for roadside units. In the late fall and early winter of 1978, the final purchases were consummated.

During June of 1979, Whiteco constructed a building of substantial size directly in front of Building No. 5. This so-called cabana is 11 feet high and measures 20 × 30 feet, with an 8 × 8 foot extension. It houses toilets, a lounge, a pool filtering system, storage facilities, and an association office. At the time of construction, the purchasers complained to their sales representative, and when Whiteco failed to remedy the situation, they filed suit.

After a trial on the merits, the following decree was entered:

## "DECREE

Plaintiffs instituted this action against defendants seeking compensatory dam-

ages and punitive damages for breach of contract and fraudulent inducement of the contract. Defendants denied the allegations.

During a two-day bench trial August 30 and 31, 1983, plaintiffs presented evidence showing they investigated the defendants' condominium development prior to purchase of their units in 1977 and 1978 and advised defendants they would purchase only a lakefront condominium unit with an unobstructed view of the lake. In reliance on representations of the defendants that the units they chose would be situated so that plaintiffs would have an unimpaired view of the lake with no man-made structures between plaintiffs and the lake, plaintiffs purchased their individual units and paid defendants $10,000.00 more per unit than comparable non-lakefront units cost.

After plaintiffs had purchased their units, defendants constructed a 20' × 30' structure that was 11 feet tall with an 8' × 8' extension between the plaintiffs' units and the lake. This structure substantially impairs the view the plaintiffs have of the lake from their condominium units. The plaintiffs' view is obstructed during the daylight hours and even more so at night because of lights on and in the structure.

Defendants fraudulently induced plaintiffs to enter into their contracts for purchase of their units. The plaintiffs would not have purchased these units if they knew such a structure would be erected and defendants were aware of this fact. Nevertheless, defendants represented and promised plaintiffs a lakefront condominium with an unimpeded view of the lake prior to plaintiffs' purchase of the units. While plaintiffs relied on this representation, defendants knew at the time they made the representations that they would build a structure between plaintiffs' units and the

**1.** For purposes of this appeal, Whiteco's liability is predicated upon the acts of its subsidiaries and representatives, which include White Investment Corporation, Henderlong Lumber Company, and Summit Development, a division of Henderlong.

lake and that it would be substantial in size.

In addition to the fraudulent inducement of plaintiffs by defendants, defendants breached their contract with plaintiffs in that defendants erected a structure that substantially impaired and ruined plaintiffs' view of the lake. The structure also resulted in plaintiffs no longer having a lakeside building. This is contrary to the agreement between the parties. Each plaintiff couple has suffered compensatory damages of $15,000.00 as a result of the fraudulent inducement by defendants and/or the breach of contract by defendants.

In addition, the defendants knowingly misrepresented the facts to the plaintiffs concerning said structure, prior to the purchase of their units, and plaintiffs relied upon these misrepresentations to their detriment. Such conduct constitutes an independent tort, fraud, misrepresentation, and deceit and should be punished by the award of punitive damages. Each couple is entitled to punitive damages in the sum of $10,000.00.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Ben and Joan Thielbar have and recover judgment against Whiteco Properties, Inc., and White Investment Corporation, jointly and severally, in the sum of $15,000.00 plus punitive damages in the sum of $10,000.00.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Harold and Joy Corsette have and recover judgment against Whiteco Properties, Inc., and White Investment Corporation, jointly and severally, in the sum of $15,000.00 plus punitive damages in the sum of $10,000.00.

IT IS FINALLY ORDERED, ADJUDGED AND DECREED that Marko and Lois Jakovich have and recover judgment against Whiteco Properties, Inc., and White Investment Corporation, jointly and severally, in the sum of $15,000.00 plus punitive damages in the sum of $10,000.00.

Costs vs. Defendants.

/s/    Newell A. Lamb
Judge, Newton Circuit Court"

■ Whiteco's arguments on appeal challenge the trial court's finding of fraud. Generally, fraud consists of misrepresentation of a material fact, scienter, deception, reliance and injury. *Jenkins v. Nebo Properties, Inc.,* (1982) Ind.App., 439 N.E.2d 686. Stated otherwise, the essential elements of *actual* fraud "are a material representation of past or existing facts, which representations are false, made with knowledge or reckless ignorance of this falsity, which cause a reliance upon these representations, to the detriment of the person so relying." *Blaising v. Mills,* (1978) 176 Ind. App. 141, at 145, 374 N.E.2d 1166, at 1169.

Whiteco first contends that the evidence is insufficient to prove that it misrepresented a past or existing fact. Whiteco characterizes its promise to the purchasers that they would have an unimpaired view of the lake as a representation regarding future action or conduct, not actionable under the theory of actual fraud.

■ In Indiana, actionable fraud cannot be predicated upon a promise to do a thing in the future, even if the promisor has no intention of fulfilling his obligation. *Sachs v. Blewett,* (1933) 206 Ind. 151, 185 N.E. 856. Although Whiteco properly states the rule of law in this regard, it erroneously characterizes the representations of its agents as a promise to do something in the future. The record indicates that Whiteco's project manager knew where the pool cabana would be located long before the purchasers contracted and closed their transactions. Whiteco's plan to build this structure was a fact in existence at the time the parties were promised an unobstructed view of the lake. The parties relied on this promise to the extent that they willingly paid a $10,000 premium for the lake view. The evidence sufficiently establishes that Whiteco misrepresented a past or present fact.

■ Whiteco next attempts to characterize its representations to the parties as

mere opinion, on which they had no right to rely. Actionable fraud cannot be based upon mere opinion, but instead requires a misrepresentation of material fact. *Cf.: South v. Colip*, (1982) Ind.App., 437 N.E.2d 494. Furthermore, a party must justifiably rely on misrepresentations in order to claim fraud. A purchaser may rely on statements of fact made by the seller which are not obviously false and where the buyer lacks facilities for ascertaining the truth, as where the facts are peculiarly within the knowledge of the seller. *Grissom v. Moran*, (1972) 154 Ind.App. 419, 290 N.E.2d 119.

■ Whiteco's representation to the purchasers is clearly a statement of fact, not an opinion. The distinction between fact and opinion has long been regarded by keen analysts as a logical absurdity. *See*, F. Wigmore, *Evidence* § 1919 (3rd ed. 1940); Keeton, *Fraud: Misrepresentation of Opinion*, 21 Minn.L.Rev. 643, 656–657 (1937); Calamari & Perillo, *Contracts* § 9–17 (2nd ed. 1977). The opinion rule serves to deny relief to persons who unjustifiably rely on a seller's "puff" or "trade talk." Calamari & Perillo, *supra*. When a seller describes goods as "best buy," "finest quality," "good as new," etc., he makes a subjective statement of opinion, on which no reasonable purchaser should justifiably rely. However, when the salesperson unqualifiedly guarantees his product to be free from defect, he is making an objective statement of fact. The promise of an unobstructed view of the lake is clearly an objective statement of fact, not subject to qualification.

■ It also appears that the purchasers justifiably relied upon Whiteco's representations. At the time purchasers were promised a lake view for a $10,000 premium, Whiteco employees had already made a decision on the size and location of the cabana. These facts were exclusively within the knowledge of Whiteco employees, and the purchasers had no means of independently ascertaining the truth. The purchasers clearly and justifiably relied on Whiteco's representations.

■ While there is more than sufficient evidence to support each essential element of actual fraud, the judgment of the trial court could also be sustained on the theory of constructive fraud. Constructive fraud has been defined as:

> "'a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.'" *Brown v. Brown*, (1956) 235 Ind. 563, 135 N.E.2d 614; *Blaising v. Mills, supra*, 176 Ind.App. 141, at 145–146, 374 N.E.2d 1166, at 1169.

Constructive fraud is fraud that arises by operation of law from conduct which, if sanctioned by law, would secure an unconscionable advantage. *Hoosier Insurance Co. v. Ogle*, (1971) 150 Ind.App. 590, 276 N.E.2d 876. As stated in *Lawshe v. Glen Park Lumber Co.*, (1978) 176 Ind.App. 344, at 347, 375 N.E.2d 275, at 278:

> "[I]f one party is induced by another, on the faith of an oral promise, to place himself in a worse position than he would have been in had no promise been made, and if the party making the promise derives a benefit as a result of the promise, a constructive fraud exists which is subject to the trial court's equity jurisdiction. *Hurd v. Ball* (1957), 128 Ind.App. 278, 143 N.E.2d 458."

■ Here, the evidence, together with the reasonable inferences drawn therefrom, support the findings that the purchasers relied in good faith upon Whiteco's promise of an unobstructed lake view, paid $10,000 extra per condominium, and were deprived of this bargain to the benefit of Whiteco. Accordingly, the judgment of the trial court could also be affirmed on this basis.

Whiteco next contends that the trial court erred in admitting evidence which was parol to the fully integrated sales contracts. These contracts are void of references to (a) any view from the condominium in general, (b) any view of the lake, and

(c) any agreement prohibiting Whiteco from building a cabana.

In Indiana, parol evidence is generally inadmissible to modify the terms of a written agreement. *Ctr. Tp. of Porter Cty. v. City of Valparaiso*, (1981) Ind.App., 420 N.E.2d 1272. This rule does not apply where there is a charge that the written contract was procured by fraud, or that a party was fraudulently induced to enter into a contract. Parol evidence is admissible to prove fraud. *See, Tribune Co. v. Red Ball Transit Co.*, (1926) 84 Ind.App. 666, 151 N.E. 338. As the purchasers' entire case is based upon the theories of fraud, actual or constructive, or fraudulent inducement, the trial court properly admitted parol evidence.

Whiteco next contends that the trial court's award of $15,000 compensatory damages is excessive and unsupported by the record. The only evidence contained in the record concerning compensatory damages indicates that the purchase price of lakeside condominiums was approximately $10,000 higher than the purchase price of roadside units.

In general, no particular degree of mathematical certainty is required in awarding damages so long as the amount awarded is supported by evidence in the record. *Colonial Discount Corp. v. Berkhardt*, (1982) Ind.App., 435 N.E.2d 65. However, an award may not be based upon mere conjecture, speculation, or guesswork. *Stoneburner v. Fletcher*, (1980) Ind.App., 408 N.E.2d 545.

The trial court's award of $15,000 compensatory damages is unsupported by the record. At most, the record indicates that the purchasers were deprived of a lakeview, for which they paid a $10,000 premium. They introduced no evidence from which the trial court could have reasonably arrived at a larger sum. This case should be remanded in order to conform the award of damages to the evidence presented.

Finally, Whiteco challenges the trial court's award of punitive damages. In order to sustain an award of punitive damages on appeal, there must be substantial evidence of probative value indicating (a) malice, fraud, gross negligence, or oppressive conduct, and (b) that the tortious conduct is inconsistent with a hypothesis of mere negligence, mistake of law or fact, over-zealousness, or other noniniquitous human failing. *Travelers Indem. Co. v. Armstrong*, (1982) Ind., 442 N.E.2d 349. Punitive damages are not sustainable "upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness." *Travelers, supra*, 442 N.E.2d at 362. Instead, the evidence must also tend to negate any hypothesis of mere negligence, mistake of law or fact, overzealousness, etc. *Travelers, supra*.

The theory of fraud on which the purchasers ultimately prevailed at trial, is based upon facts which adequately support an award of punitive damages. As stated in the court's findings:

"Defendants fraudulently induced plaintiffs to enter into their contracts for purchase of their units. The plaintiffs would not have purchased these units if they knew such a structure would be erected and defendants were aware of this fact. Nevertheless, defendants represented and promised plaintiffs a lakefront condominium with an unimpeded view of the lake prior to plaintiffs' purchase of the units. While plaintiffs relied on this representation, defendants knew at the time they made the representations that they would build a structure between plaintiffs' units and the lake and that it would be substantial in size.

\* \* \* \* \* \*

"In addition, the defendants knowingly misrepresented the facts to the plaintiffs concerning said structure, prior to the purchase of their units, and plaintiffs relied upon these misrepresentations to their detriment. Such conduct constitutes an independent tort, fraud, misrepresentation, and deceit and should be

punished by the award of punitive damages."

These facts, supported by evidence in the record, clearly establish fraudulent conduct which necessarily negates any hypothesis of noniniquitous behavior. The trial court properly awarded punitive damages.

This cause is affirmed and remanded for the purpose of conforming the amount of compensatory damages to the evidence.

Affirmed and remanded.

STATON, P.J., and GARRARD, J., concur.